NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IRIS ANDREWS, | : |
|  | : Civil Action No. 13-6607 |
| *Plaintiff,* | : |
|  | : OPINION |
| v. | : |
|  | : May 7, 2015 |
| CAROLYN W. COLVIN, | : |
| Acting Commissioner of Social Security, | : |
|  | : |
| *Defendant.* | : |

**ARLEO**, UNITED STATES DISTRICT JUDGE.

Before this Court is Plaintiff Iris Andrews's request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). Plaintiff argues that (1) the Appeals Council abused its discretion by vacating and reversing the Administrative Law Judge's decision; and (2) the Commissioner's decision was not supported by substantial evidence. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is beyond meaningful judicial review. Accordingly, the Commissioner's decision must be **REMANDED** for further consideration consistent with this Opinion.

I. STANDARD OF REVIEW AND APPLICABLE LAW

A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Further, this Court must review the determination of the Appeals Council as the "final decision" of the Commissioner, as opposed to the decision of the administrative law judge. Welch v. Heckler, 808 F.2d 264, 267 (3d Cir. 1986). Therefore, even if this Court would have decided the matter differently, it is bound by the Appeals Council findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the

claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

 **B. The Five-Step Disability Test**

  In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

  At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask,

at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503.  If so, the claim for benefits must be denied.  The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing."  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007).  While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis.  See Podedworny, 745 F.2d at 221-22.

## II. DISCUSSION

### A. Procedural History

This case arises out of Plaintiff's May 25, 2011, applications for disability insurance benefits and supplemental security income, which were denied both initially on October 11, 2011, and on reconsideration on February 2, 2012.  (Tr. 93-102, 110-15).  Plaintiff then sought review before an administrative law judge, and a hearing before the Honorable Donna Krappa (the "ALJ") occurred on March 6, 2013.  (Tr. 22).  Following the hearing, the ALJ issued a decision on May 22, 2013, in which she found that Plaintiff was disabled.  (See Tr. 15-21).  On July 15, 2013, the Appeals Council notified Plaintiff that, pursuant to 20 C.F.R. §§ 416.146 and 416.1470(a), it had

decided on its own motion to review the ALJ's decision.  After a review of the record, the Appeals Council ruled on August 30, 2013 that the Plaintiff was not disabled within the meaning of the Act, thereby reversing the ALJ.  (See Tr. 8).  The decision of the Appeals Council became the final decision of the Commissioner.  Plaintiff then timely filed the instant action on November 1, 2013. (Dkt. No. 1, Compl.).

### B. Factual Background

Plaintiff is a 43-year-old woman who alleged in her applications for Disability Benefits that she became disabled on April 1, 1999.  (Tr. 167, 171).[1]  Prior to the onset of her alleged disability, Plaintiff worked intermittently as a cook at various fast food restaurants.  (See Tr. 209). In each restaurant, Plaintiff prepped food, cooked orders, and performed cleaning tasks.  (Tr. 209-16).

Plaintiff claimed in her initial application that she suffers from depression, obsessive compulsive disorder, and bipolar disorder.  (Tr. 60).  She lives with three of her five children and spends the majority of her day cleaning.  (Tr. 27-28).  Plaintiff alleges that her condition prevents her from performing any work as she becomes overwhelmed and unstable.  (Tr. 166, 168).

Plaintiff's medical history begins on October 13, 2010.  At that time, Plaintiff reported increased levels of depression and isolation.  (Tr. 297).  Next, at an initial psychiatric assessment on November 9, 2010, Plaintiff reported depression, insomnia, decreased appetite, and anhedonia, although her mental status examination indicated normal speech and motor activity, cooperative behavior, good eye contact, normal affect, coherent thoughts, and no delusions or suicidal/homicidal ideation.  (Tr. 301-06).  Examining Doctors Marek Belz and Manoj Puthiyathu,

---

[1] Plaintiff later changes her alleged disability date to October 1, 2001. (Tr. 273).

however, diagnosed Plaintiff with major depressive disorder recurrent, moderate; personality disorder not otherwise specified with antisocial traits; and assessed her GAF to be 45.[2]  (Tr. 307).

Plaintiff continued to receive treatment at Bergen Medical Center through March 7, 2012. (Tr. 366-68).  During this time, Plaintiff generally complained of the same symptoms and had her medications steadily increased from October 13, 2010, through March 7, 2012.  In the most recent treatment notes, dated March 7, 2012, Dr. Puthiyathu described Plaintiff's complaints of mood swings, isolative behaviors, increased mood reactivity, and middle insomnia.  (Tr. 366-68). Adittionally, Dr. Puthiyathu referred Plaintiff for additional psychotherapy to focus on her coping skills. (Tr. 367).

On August 28, 2012, Dr. Heather Greenspan, a psychiatrist at the Bergen Regional Medical Center, provided a Psychiatric/Psychologic Disability Questionnaire, which Drs. Belz and Puthiyathu endorsed.  (Tr. 372-80).  Dr. Greenspan diagnosed Plaintiff with OCD, major depressive disorder, and a current GAF of 55.[3]  Supporting her diagnosis, she found Plaintiff showing symptoms of sleep disturbance; personality change; mood disturbance; emotional liability; recurrent panic attacks; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; decreased energy; obsessions or compulsions; and hostility and irritability. (Tr. 373).

Furthermore, Dr. Greenspan found Plaintiff markedly limited in her ability to: (1) make simple work decisions; (2) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

---

[2] A GAF or Global Assessment of Functioning Score between 41-50 indicates "[s]erious impairments in social, occupational (e.g. no friends, can't keep a job)."  (Tr. 308).
[3] A GAF or Global Assessment of Functioning Score between 51-60 indicates "[m]oderate symptoms or difficulties (e.g. few friends, conflicts with peers)."  (Tr. 308).

number and length of rest periods; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; (5) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (6) travel to unfamiliar places or use public transportation. (Tr. 376-77). Additionally, Dr. Greenspan noted Plaintiff was: (1) mildly limited in her ability to maintain attention and concentration for extended periods; (2) moderately limited in her ability to work in coordination with or proximity to others without becoming distracted; (3) incapable of even low stress work; and (4) likely to be absent from work as a result of the impairments or treatment more than three times a month. (Tr. 376-79).

### C. The Commissioner's Decision

On February 29, 2012, Plaintiff requested a hearing before an ALJ, which occurred on March 6, 2013. (Tr. 22, 116-20). Following the hearing, the ALJ issued her decision on May 22, 2013, finding that Plaintiff was disabled. (Tr. 15-21). After finding at step three that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ described Plaintiff's RFC as follows:

> [Plaintiff] has the [RFC] to perform the <u>exertional demands</u> of light work as defined in 20 CFR 416.967(b) specifically, [Plaintiff] is able to: lift/carry 20 [pounds] occasionally and 10 [pounds] frequently; stand/walk for 6 hours in an eight hour day; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the <u>postural and environmental demands</u> of work, I find that claimant is able to perform jobs that require no use of ladders, ropes, or scaffolds; that require frequent (as opposed to unlimited) use of ramps or stairs; that require occasional balancing, stooping, kneeling, crouching, and/or crawling; and that require no exposure to unprotected heights, hazards or dangerous machinery. Furthermore, as to the <u>mental demands</u> of work, I find that the claimant is able to perform jobs: that are unskilled and repetitive; that are low stress (that is, these jobs require an occasional change in the work setting during the workday, only an occasional change in decision making required during the workday, and, if production based, production is monitored at the end of the day rather than consistently throughout it); and that require only

7

>occasional contact with supervisors, and co-workers, but no contact with the general public.

(Tr. 18) (emphasis in original). Thus, the RFC did not include certain limitations identified by Dr. Greenspan, such as Plaintiff's likely need to be absent from work at least three times per month. (Tr. 379). The ALJ then determined that Plaintiff did not have any past relevant work; thus, the analysis moved to step five. (Tr. 20). There, the ALJ found the Plaintiff disabled—that is, given Plaintiff's RFC, the ALJ found that no jobs existed in significant numbers in the national economy that Plaintiff could perform in light of her age, education, work experience, and RFC. (Tr. 20-21).

The ALJ based that finding on the testimony of a vocational expert ("VE") who appeared at the March 6, 2013, hearing. (Tr. 21). At the hearing, the ALJ posed several hypothetical situations to the VE in which she first laid out a hypothetical RFC and then asked whether there were any jobs that a person with that RFC could perform. (Tr. 37-40). The first of these hypotheticals tracked the RFC quoted above:

> [L]et's assume someone of [Plaintiff's] age, educational background and work experience. Now let's assume the best she can do are the demands of light work, 20 pounds occasionally, 10 pounds frequently, stand or walk six hours in an eight-hour workday, perform unlimited pushing and pulling. . . . This person can have no work in close proximity to others and by that I mean no closer than three to five feet to avoid distraction and only occasional contact with supervisors and coworkers and no contact with the general public. Given that [RFC] would there be any jobs a person could perform?

(Tr. 37-38). In response, the VE stated that Plaintiff could perform the jobs of laborer, laundry folder, and ticketer. (Tr. 38). For those occupations, the VE testified that 11,400 total jobs existed regionally and 440,000 existed nationally. (Id.). The ALJ then asked whether jobs existed for a person capable of only sedentary work (as opposed to light work) with all of the same limitations. (Id.). The VE responded that such a person could perform the jobs of scale operator, preparer, and polisher for a total of 1,000 jobs regionally and 93,000 jobs nationally. (Tr. 38-39).

8

Next, The ALJ posed additional limitations to the VE in four successive hypotheticals: (1) persons having problems maintaining concentration during the workday; (2) persons who must be absent from work three times or more per month; (3) persons who cannot handle even low stress jobs; and (4) persons having less than occasional contact with supervisors and coworkers.[4] (Tr. 39-40). These were precisely the additional limitations that Dr. Greenspan identified, and the ALJ explicitly stated at the hearing that she was relying on Dr. Greenspan's report. (See Tr. 39, 376-79). To each of these hypotheticals, the VE responded that no jobs would be available to the Plaintiff. (Tr. 39-40). Apparently, then, the ALJ's step five finding was based on at least one of these four hypotheticals, since the first two hypotheticals showed the existence of a significant number of jobs in the national economy.[5] The ALJ did not, however, identify which of the hypotheticals she was relying upon, nor did she explicitly include any of the four limitations in the RFC. (See Tr. 18, 20-21).

On its own motion, the Appeals Council ruled on August 30, 2013, that Plaintiff was not disabled, thereby reversing the ALJ. (Tr. 8). In reaching that conclusion, the Appeals Council adopted the ALJ's findings with the exception of the ALJ's step five determination. Specifically, the Appeals Council found that Dr. Greenspan's evaluation supported the ALJ's RFC determination, but the Appeals Council disagreed with the ALJ's finding that no jobs existed in the national economy that Plaintiff could perform. (Tr. 6). That is, the Appeals Council found

---

[4] It is unclear whether the VE intended his answers to these hypotheticals to apply to a person capable of both light and sedentary work. If applicable only to a sedentary worker, then the answers would be irrelevant in light of the ALJ's determination that Plaintiff is capable of light work. If applicable to both sedentary and light workers, then the VE's answers remain relevant. Accordingly, this issue must also be clarified on remand.

[5] Cf. Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding 200 total regional jobs to be "clear indication" that significant work in the national economy existed). See also Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d Cir. 2013) (citing Craigie with approval and holding that 569 available jobs was sufficient).

9

that jobs did exist in significant numbers in the national economy that a person with Plaintiff's RFC could perform. (Id.). The Appeals Council relied upon the testimony of the VE in conjunction with the Dictionary of Occupational Titles and concluded that a significant number of such jobs existed. (Tr. 7). The Appeals Council therefore appeared to rely on the VE's responses to the first two hypotheticals, but the Appeals Council discussed neither those hypotheticals nor the other hypotheticals that the ALJ posed to the VE. (Id.).

### D. Analysis

As noted previously, the Appeals Council and the ALJ determined that the Plaintiff was capable of performing light work as defined at 20 C.F.R. § 416.967(b) and was further limited to jobs that: 1) are unskilled and repetitive; 2) are low stress; 3) require only occasional contact with supervisors and coworkers; and 4) require no contact with the general public. (See Tr. 4-5; 18). The Appeals Council and the ALJ differed, however, on whether a significant number of jobs existed in the national economy that Plaintiff could perform. Because the Appeals Council and the ALJ have failed adequately to explain the reasoning for their determinations, the Court finds that it is unable to conduct a meaningful judicial review of whether the determinations are supported by substantial evidence in the record. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000).

In determining a claimant's RFC, the Commissioner is required to consider all relevant evidence. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Such relevant evidence includes not only medical evidence, but also "descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." Id. In considering all of the relevant evidence, the Commissioner unambiguously requires the Appeals Council and the ALJ to provide a "narrative discussion describing how evidence supports each conclusion, citing specific medical

facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). If the Appeals Council and the ALJ fail to provide a "clear and satisfactory explication of the basis on which [the RFC determination] rests," this Court is deprived of the ability to discharge its duty to determine whether the Commissioner's decision is supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

A substantial portion of the ALJ's RFC analysis relies on Dr. Greenspan's findings. (Tr. 19). But the ALJ merely recites Dr. Greenspan's general findings without providing any explanation as to which specific findings were included in, or excluded from, the ultimate RFC determination. (See id.). Most importantly, the ALJ makes no mention of the four limitations identified by Dr. Greenspan on which the ALJ relied when questioning the VE regarding the availability of jobs for a person with those limitations. This fact is significant because the ALJ stated in her decision that she "asked the [VE] whether jobs exist in the national economy for an individual with the [Plaintiff's RFC and] the vocational expert testified that given all of these factors, there are no jobs in the national economy that the individual could perform." (Tr. 20-21). The ALJ does not, however, identify which hypothetical she relied on and, as noted above, the VE found that jobs did exist for a person with the RFC that the ALJ explicitly adopted. There is therefore a clear disconnect between the RFC that the ALJ adopted at step four and the RFC that the ALJ applied at step five—that is, the ALJ either incorrectly penned the RFC in the first instance or incorrectly applied it.

The Appeals Council's decision does not rectify this confusion. The decision provides very limited discussion of Dr. Greenspan's evaluation. (See Tr. 6). The Appeals Council found "Dr. Greenspan's opinion support[s] the assessed mental limitations in the [RFC]. Specifically, the [Plaintiff] is limited to unskilled and repetitive work with low stress, occasional contact with

11

supervisors and coworkers, and no contact with the general public." (Id.).[6] This finding mischaracterizes the limitations identified in Dr. Greenspan's report, however, since Dr. Greenspan found that Plaintiff is "incapable of even 'low stress'" and is markedly limited in her ability to get along with co-workers. (See Tr. 379-80). Furthermore, the Appeals Council failed to address the other limitations Dr. Greenspan found, including Plaintiff's problems maintaining concentration during the workday and Plaintiff's need to be absent from work three times or more per month. (See Tr. 5-6). Not surprisingly, the Appeals Council ignored the hypotheticals including these limitations and stated only that it credited "the testimony of the [VE] regarding the jobs that he identified that the claimant could perform in the national economy." (Tr. 7). The Appeals Council thus appears to have concluded that the ALJ simply misapplied the RFC at step five. But the Appeals Council failed to consider whether the ALJ may have inadvertently omitted from the RFC the additional limitations Dr. Greenspan identified.

Given that both the Appeals Council and the ALJ credited Dr. Greenspan's report, the failure to discuss those additional limitations renders this Court unable to conduct a meaningful judicial review. Accordingly, the Court must remand this case for a determination of whether Plaintiff's RFC should have included the additional limitations identified by Dr. Greenspan and, if so, whether jobs exist in significant numbers in the national economy for a person with that RFC.

---

[6] The Appeals Council notes that "while Dr. Greenspan is a psychiatrist at the Bergen Regional Medical Center where the claimant received treatment, the record contains treatment notes signed by Marek Belz, M.D., and Manoj Puthiyathu, M.D., rather than Dr. Greenspan." (Tr. 5-6). What the Appeals Council fails to mention, however, is that Doctors Belz and Puthiyathu are co-signatories on Dr. Greenspan's evaluation. (Tr. 380).

12

### III.     CONCLUSION

Because the Court finds that the Appeals Council's decision is beyond meaningful judicial review, the Commissioner's disability determination is **REMANDED** for further consideration consistent with this opinion.  An appropriate order will follow.

s/ *Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**
